**In the Matter of Adam Donald BOURGEOIS et al., Bankrupt.**

**No. 73 B 2851.**

United States District Court, N. D. Illinois, E. D.

Sept. 9, 1975.

Stanley W. Cooke, Chicago, Ill., for University Nat. Bank.

Glenn R. Heyman, Chicago, Ill., trustee.

## MEMORANDUM DECISION

MARSHALL, District Judge.

This is the second appeal from an order by the bankruptcy court overruling the objections of University National Bank to the discharge of $17,000 plus interest owed to it by the bankrupt, Adam Donald Bourgeois. For the reasons hereinafter stated the order is reversed and the objections are remanded for further proceedings consistent with the views expressed herein.

Bourgeois is a lawyer. On January 7, 1972 he borrowed $4,000 from University on an unsecured note, representing it was to be used to pay the school tuition of his children. On February 7, 1972 he borrowed an additional $8,000 to pay for furniture he had purchased from John M. Smyth Co.[1] He executed an unsecured note for $12,000 which served to pay the first loan. On March 11, 1972 he borrowed $5,000 to be used to settle a divorce action brought against him by his former wife, executing an unsecured note in that amount.

At the time of the first transaction Bourgeois gave University a personal financial statement showing his assets to be $22,000 and his liability $6,000 with a net worth of $16,000. He scheduled a contingent liability of $12,500 as co-maker of a note. He answered "no" to a question, "Are you defendant in any suits or legal actions?"

On May 16, 1973 Bourgeois filed a voluntary petition in bankruptcy in which he scheduled the indebtedness to University. He also scheduled $47,000 in other liabilities which antedated his transactions with University.

University objected to the discharge of the obligations owed it upon the ground that Bourgeois' personal financial statement was materially false. He answered pleading certain facts in purported avoidance of University's charges and asserting that University did not rely on the financial statement in making the loans.

An evidentiary hearing was held and University established prima facie that Bourgeois had substantially understated his liabilities. It also proved that he had overstated his assets (by failing to disclose a loan against an insurance policy which he listed as an asset) and was in fact the defendant in a divorce action, brought in November 1971, when he stated that he was not a defendant in any suit or legal proceeding.

George R. Kratt, a vice president of University, had dealt with Bourgeois. He testified that at the time Bourgeois filled out the financial statement "he said he had a lot of little bills to pay

---

1. Smyth was never paid and is scheduled as a creditor.

and what have you, and he asked if he needed to show those on his financial statement, and I told him he did not." Bourgeois took this as a license to omit a $25,000 note to Drovers National Bank, and debts of $5,000 to Independence Bank, $5,000 to Wilma Van Etta, $2,957.80 to American Express, $4,460.-12 to TransWorld Airlines, $3,307.23 to Marshall Field and Company, $1,072.69 to Standard Oil Co. and 55 other "what have you's" totalling $10,704.53, all of which antedated January 7, 1972 and all of which he scheduled in his bankruptcy petition.

Kratt also testified that he was aware that Bourgeois had recently left the faculty of Ohio State University and entered the private practice of law in Chicago, where, according to Bourgeois, he expected "to represent Leonard Wolfson on a yearly retainer of $25,000." But, testified Kratt, he and the bank relied upon the financial statement in making the first two loans of $4,000 and $8,000.

On February 10, 1972 Bourgeois asked to borrow an additional $5,000 from University to settle the divorce action which had been brought against him by his wife. Kratt asked, "Why didn't you tell me about this divorce when you borrowed the $8,000?" Bourgeois replied, "You wouldn't have given me the loan." To which Kratt added, " . . . and we wouldn't have."

Kratt further testified that at the time of the $5,000 loan the financial statement was again relied on "from the standpoint that the statement shows a $3,000 asset in the form of actual cash value in life insurance. . . ." University took assignment forms from Bourgeois covering the life insurance but upon sending them to the carriers, discovered that he "had already borrowed against the cash value, not effectively leaving anything with which to secure our position."

Bourgeois was examined by counsel for University. He testified that Kratt had told him he did not have to list all of his debts. He said that he had told University's officers that his financial situation was very poor but they "had expectations of me since I was presumed to be able to make enough money to eventually pay the loans."

Insofar as the divorce action was concerned, he omitted it from the statement either because he had not been served or because he thought the question "Are you defendant in any suits or legal actions?" was limited to "whether any creditors were suing me for any money."

When asked whether on January 7, 1972 his assets exceeded his liabilities by $16,000, he asked to see the financial statement and then sought to avoid the question by responding that the totals of assets and liabilities and resultant net worth appearing on the statement in pencil were written by Kratt. When the avoidance didn't work he responded, "I don't know what my net worth was on January 7, 1972, and that statement didn't purport to do that; didn't purport to include all my debts, didn't purport to include anything." He filled it out because Kratt told him to and he filled it out the way Kratt told him to.

In rebuttal of this last claim Kratt testified, "I answered his questions and assisted him from that standpoint as to where you put this, and that type of thing, but obviously I couldn't give him the numbers, and I didn't know what assets he had. For example, I didn't know that he had any life insurance . . . . "

At the conclusion of the evidentiary hearing the bankruptcy court denied University's objections. An appeal was taken and the cause reversed and remanded upon the grounds that the financial statement was materially false and the bankruptcy court had failed to make adequate findings with regard to University's reliance or non-reliance thereon.

Upon remand and without hearing further evidence the bankruptcy court entered fresh findings which on their

face appear to have been prepared by Bourgeois' lawyers.

The findings recite that Bourgeois' liabilities were not omitted from the financial statement "with the intention of deceiving the University National Bank." Finding No. 6. They go on to recite that University did not rely on the financial statement but instead relied "upon the facts that Bourgeois had been a university professor and was about to engage in a law practice which the officers of the bank expected would produce sufficient revenues to justify making of the loans." Finding No. 8.

With due regard for the superior position of the bankruptcy judge in assessing the credibility of the witnesses, those findings are clearly erroneous. Rules 752(a) and 810, Bankruptcy Rules.

The testimony is uncontradicted that Bourgeois stated to Kratt the reason he did not disclose the divorce proceedings was because University "wouldn't have given me the loan."

The testimony is uncontradicted that Bourgeois went through the charade of filling out insurance assignment forms at the time of the third loan, when he had already borrowed against the policies to their limit.

The evidence is uncontradicted that Bourgeois disclosed only $6,000 in liabilities ($3,000 of which was denominated school tuition) and omitted in excess of $47,000.

Even on the stand he asserted that he, a lawyer, did not think the question regarding "suits or legal actions" included divorce proceedings.

The finding and conclusion that Bourgeois did not intend to deceive University is clearly erroneous and is set aside.

Kratt testified unequivocally that University did rely on the financial statement. For his part, Bourgeois testified that he had told University's officers his financial situation was "very poor" (although the financial statement did not reveal that fact) but they had "expecta-

tions" of him since he "was presumed to be able to make enough money to eventually pay the loans."

Bourgeois' lack of credibility aside, his testimony is no response to Kratt's nor does it afford the basis for the bankruptcy court's finding of non-reliance. Of course an unsecured creditor expects its debtor to pay out of generated cash flow rather than assets. But that does not mean that the creditor does not rely on a financial statement which shows the debtor with a net worth of $16,000.

The findings and conclusions of non-reliance on the financial statement and sole reliance upon Bourgeois' future are clearly erroneous and are set aside.

The order denying the objections of University National Bank is reversed and remanded with instructions to sustain the objections.